# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

ADAM LANE,                                                                               PLAINTIFF
ADC #155843

v.                               4:20CV00553-KGB-JTK

DEXTER PAYNE, et al.                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

     1.     Why the record made before the Magistrate Judge is inadequate.

     2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

     3.     The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.  Introduction

Plaintiff Adam Lane is a state inmate incarcerated at the East Arkansas Regional Maximum Unit (EARU) of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging that Defendants subjected him to sexual harassment and retaliation in February 2020, while he was incarcerated at the Tucker Unit. (Doc. No. 7) All Defendants, except Justin Powell, were dismissed on January 27, 2021. (Doc. No. 25)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by remaining Defendant Justin Powell. (Doc. Nos. 28-30) On April 2, 2021, the Court granted Plaintiff an additional thirty days to respond. (Doc. No. 32) As of this date, however, Plaintiff has not responded, or otherwise corresponded with the Court.

## II.  Amended Complaint (Doc. No. 7)

Plaintiff alleged that Defendant Powell placed him on suicide watch, completely naked in a cell, on February 2, 2020. On February 3, 2020, Defendant Perry came to his cell for a mental health assessment, and he asked her to tell Defendant Powell to give him a blanket because he was

freezing. Powell continuously interrupted his conversation with Perry and said he would not give Plaintiff a suicide blanket until he calmed down and was respectful to the staff. Powell also told Plaintiff to watch his mouth, as Powell was from Pine Bluff "its Cripshit, you keep playing and when you get to population Imma have someone fuck you in the ass." Plaintiff was kept on suicide watch without a blanket in freezing temperatures until February 5, 2020. Plaintiff filed a report against Powell and Perry with the PREA hotline and filed emergency grievances.

On February 26, 2020, Powell went to Plaintiff's cell, "shook my door violently and said, 'you wanna play those bitch ass games with that Prea hot-line-an those grevences." When Perry came to check his mental health, he told her that Powell's threats and intimidation tactics for calling the PREA hotline made him anxious and unstable. Plaintiff asked for monetary and injunctive relief in the form of compassionate release.

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary

judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party...." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

### A. Official Capacity Liability

The Court initially agrees with Defendant that Plaintiff's monetary claims against him in his official capacity should be dismissed, pursuant to sovereign immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

### B. Individual Capacity Liability

The Court also agrees with Defendant that the individual capacity claims should be dismissed, pursuant to qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Defendant presented the following Declarations and Exhibits in support of his Motion, stating that even if Plaintiff's allegations are accepted as true, his actions do not give rise to a sexual harassment claim. In addition, the evidence does not support Plaintiff's retaliation claim, because Defendant Powell did not take any adverse action against Plaintiff and because the alleged retaliatory conduct violations were issued for the actual violation of a prison rule, which was supported by "some evidence."

### 1) Warden Joe Page Declaration

Joe Page, who was Warden of the Tucker Unit at the time, stated that Plaintiff was housed at the Unit from September 5, 2019, until March 9, 2020, when he was transferred to the EARU. (Doc. No. 28-4) During February 2020, Plaintiff filed three allegations of sexual harassment against Defendant Powell. (Id.) ADC policies for preventing, detecting, and responding to inmate claims of sexual abuse and harassment are found in Administrative Directive (AD) 15-29, the

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

Prison Rape Elimination Act (PREA) Policy. (Id., p. 2, Doc. No. 28-14) The policy defines sexual harassment as a staff member's verbal comments or gestures of a sexual nature to an inmate, and provides that after such an allegation, a unit level investigation be conducted. (Doc. No. 28-4, p. 2) This includes actions to protect the victim, secure the crime scene, preserve evidence and collect information to be used to determine the level of response. (Id.) If the allegation involves potentially criminal behavior, it is referred to the Arkansas State Police. (Id.) All allegations will be entered into eOMIS under an incident report, and the Warden reviews them to determine if referral for investigation to Internal Affairs is warranted. (Id.)

Plaintiff called the PREA hotline on February 21, 2020, to report that Powell told him on February 2, 2020, to "watch what I say in this prison because he gang related. He said you making all these threats wait until somebody fuck you in your ass." (Id., p. 4) A Unit level investigation was conducted and the Warden referred the allegation to Internal Affairs. (Id.) On April 10, 2020, Internal Affairs found that the allegation was unfounded and the investigation was closed. (Id.) Plaintiff requested that a nurse file a PREA report on February 28, 2020 against Powell because Powell threated to have someone "fuck him in his ass." (Id.) During the Unit level investigation, it was determined that this was the same allegation made on February 21, 2020, and it was then referred to the Warden, who referred it to Internal Affairs. (Id.) On May 9, 2020 Internal Affairs found the allegation unfounded and closed the investigation. (Id., p. 5)

On March 16, 2020, Page responded to two grievances filed by Plaintiff against Powell, which were filed on February 29, 2020, and March 1, 2020. (Id.) In those grievances, Plaintiff complained that Powell threatened him on February 4, 2020, when he came to his cell with Sonya Perry, and that Powell continued to violate PREA standards by using threats, intimidation, and retaliation. (Id., pp. 5-6) Page informed Plaintiff that the allegations had been investigated and

referred to Internal Affairs and the PREA compliance manager. (Id., p. 6) In a third grievance, filed March 19, 2020, Plaintiff complained that Powell came to his cell, shook his door and verbally threatened him for filing grievances and calling the hot line. (Id.) This grievance was rejected at all levels as untimely. (Id.) (See also the grievances, Doc. Nos. 28-8 – 28-10.)

### 2) Defendant Powell Declaration

In February 2020, Powell was employed at the Tucker Unit as the sergeant over restrictive housing. (Doc. No. 28-2, p. 1) Plaintiff was assigned to that area after he received a disciplinary, and he often accused Defendant Powell of not doing his job. (Id.) On February 2, 2020, Powell notified mental health staff that Lane told him he was suicidal. (Id.) Mental Health then placed Lane on suicide watch and moved him to a suicide cell, where mental health determined what items he could possess, in addition to a paper gown. (Id., p. 2) Lane asked Powell for a blanket, but because he did not have that authority, Powell asked Sonya Perry, the Unit mental health advisor, to talk with Lane. (Id.) During that conversation, Perry asked Powell to step to the side, and Powell did not interrupt their conversation. (Id.) However, when Lane "became riled up" Powell tried to help Perry calm Plaintiff down, without threats. (Id.) Powell denied that he verbally threatened Plaintiff on both that date and on February 26, 2020. (Id.) Powell also was not allowed to be around Plaintiff after Plaintiff filed a complaint with the PREA hotline, and he did not participate in a search of Plaintiff's cell with Sgt. Ross on February 28, 2020. (Id., p. 3) During that search, Ross found a shank underneath Plaintiff's toilet and discovered that the window in his cell door was shattered. (Id.) Ross then issued Plaintiff a disciplinary violation, without any involvement by Defendant Powell. (Id.) Powell also denied that he verbally harassed Plaintiff on March 5, 2020 and denied that he stopped by Lane's cell because of the PREA allegations. (Id., p. 4)

### 3) Sonya Perry Declaration

Sonya Perry, the Unit mental health adviser at the time, stated that she conducted a mental health assessment of Plaintiff on February 3, 2020, after he was placed on suicide watch with only a paper gown, due to safety concerns. (Doc. No. 28-3, p. 1) Defendant Powell escorted her to Plaintiff's cell, and although he was present during her conversation with Plaintiff, he never interrupted their discussions. (Id.) Perry stated that she possessed the authority to approve Plaintiff to have a blanket, and that when Plaintiff became upset that he could not have one, Powell tried to help calm him down. (Id., pp. 1-2) Perry stated that Powell did not verbally threaten Plaintiff in any way or say anything inappropriate to Plaintiff on that date or any other time she visited Plaintiff in restrictive housing. (Id., p. 2)

### 4) Raymond Naylor Declaration

Naylor is employed by the ADC as the Internal Affairs/Disciplinary Hearing Administrator. (Doc. No. 28-5, p. 1) In March 2020, Warden Page requested that he review three allegations of sexual harassment which were made by Plaintiff against Defendant Powell. (Id.) Based on a review of the files, Naylor's office determined that the February 2, 2020, February 28, 2020, and March 4, 2020 allegations were unfounded. (Id., p. 4) Naylor also reviewed Plaintiff's disciplinary files, and found that on February 28, 2020, Sgt. Erika Ross issued Plaintiff a disciplinary for possession of a weapon/unauthorized tool and destruction of property. (Id., pp. 4-5) In a second disciplinary, issued on March 4, 2020, Ross charged Plaintiff with several rule violations, including recruitment or participation in a security threat group, assault, and insolence to a staff member. (Id., p. 5) Pursuant to the ADC disciplinary policies, hearings were conducted at which Plaintiff was allowed to provide a statement for the record. (Id., pp. 9-11) Plaintiff was found guilty at all the hearings and was sentenced to punitive isolation and received reductions in

class and loss of privileges. (Id.) Both Naylor and the ADC Director affirmed the decisions on appeal. (Id., Doc. Nos. 28-6, 28-7)

### 5) Other Evidence

Erika Ross stated in a Declaration that she conducted a shakedown of Plaintiff's cell, without Defendant Powell, on February 28, 2020, and discovered a shank under the toilet and a shattered cell window. (Doc. No. 28-15, pp. 1-2) She placed Plaintiff on behavior control and issued a disciplinary violation, without Powell's involvement. (Id., p. 2) She issued Plaintiff another disciplinary charge on March 4, 2020, after Plaintiff verbally threatened her about the first charge. (Id.) Powell also was not involved in this disciplinary decision. (Id., p. 3)

Terrie Banister was the disciplinary hearing officer at Plaintiff's March 5, 2020 hearing and found him guilty of possession/introduction of any firearm, ammunition, weapon, fireworks, explosive, unauthorized combustible substance or unauthorized tool, after a fair and impartial consideration of the evidence presented, which included Plaintiff's statement. (Doc. No. 28-16)

In his deposition, Plaintiff stated that he is affiliated with the Gangster Disciples. (Doc. No. 28-1, p. 13) He admitted that Sonya Perry had the authority to provide him with a blanket, but claimed that Powell interrupted his conversation with Perry and told her he did not need a blanket. (Id., pp. 23-26) He stated he was released from the suicide watch on February 5, 2020, and moved to another cell in restrictive housing. (Id., p. 34) He also claimed Powell verbally threatened him with gang retaliation on two occasions, and retaliated against him by participating in the search of his cell (contrary to PREA policy). (Id., pp. 34-38) He did admit that Sgt. Ross conducted the search of his cell on February 28, 2020, but complained that Powell continued to harass him in the form of threats, intimidation and retaliation. (Id., pp. 40-55) He also admitted that his complaints were investigated by Internal Affairs, but claimed that Powell was present during his statement to

the officials. (Id., p. 48)

      **6)**     **Analysis**

In light of Plaintiff's failure to respond to the Motion and to offer a dispute of the facts asserted by Defendant, the Court hereby finds that the facts set forth by Defendant (Doc. No. 30) are undisputed for purposes of this Motion, and recommends that summary judgment be granted as a matter of law. See FED.R.CIV.P. 56(e)(2), (3).

Although sexual harassment or abuse of an inmate by a prison guard "may in some circumstances constitute the unnecessary and wanton infliction of pain which is forbidden by the Eighth Amendment ... harassment without any physical contact is insufficient to constitute the unnecessary and wanton infliction of pain." Philmlee v. Byrd, No. 4:10cv00221-BSM-HDY, 2010 WL 6549829, at *3 (E.D.Ark), report and recommendation adopted, 2011 WL 1542655 (E.D.Ark.), citing Howard v. Everett, 208 F.3d 218 (8th Cir. 2000). In this case, however, Plaintiff alleged no touching or overtly sexual comments; rather, his allegations were about verbal threats, which are not actionable under § 1983. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997) (quoting Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992)).

In addition, Plaintiff fails to support a claim for unconstitutional retaliation. To support this claim, Plaintiff must allege and prove "that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007). Plaintiff's protected activity in this case was the filing of grievances and PREA complaints, but he presented no evidence that Powell took any adverse action against him, since Powell did not participate in the search of his cell and Powell did not file the disciplinary charges

against Plaintiff. Plaintiff's claim also fails because the alleged retaliatory conduct violations were issued for the actual violation of a prison rule and some evidence was presented at the disciplinary hearings to support the convictions. Hartsfeld v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Id. at 831. See also Sanders v. Hobbs, 773 F.3d 186, 190 (8th Cir. 2014).

Therefore, absent additional facts or evidence from Plaintiff to show otherwise, the Court finds that Defendant acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

**IV.  Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 28) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 17th day of May, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE